1  Wesley H. Avery, Esq. CLS-B (SBN 155724)
   Lucy A. Mavyan (SBN 260811)
2  **LAW OFFICES OF WESLEY H. AVERY, APC**
   758 E. Colorado Blvd. Ste. 210
3  Pasadena, CA 91101-2105
4  (626) 395-7576 (office)
   (661) 430-5467 (fax)
5  wavery@thebankruptcylawcenter.com

6  Attorney for Timothy Yoo, chapter 7 trustee

7  *Fortis est veritas*

8            **UNITED STATES BANKRUPTCY COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

10

11  In re                                    Case No. 2:21-bk-15204-BB
                                             Chapter 7
12  ALLORA HOLDINGS, LLC, a Delaware
    limited liability company,               **NOTICE OF MOTION AND MOTION**
13                                           **FOR ORDER APPROVING**
                 Debtor.                     **COMPROMISE OF CONTROVERSY**
14                                           **MEMORANDUM OF POINTS AND**
                                             **AUTHORITIES; DECLARATIONS IN**
15  TID 82-2007583                           **SUPPORT THEREOF [Fed. R. Bank. P.**
                                             **9019 and LBR 9013-1(o)]**
16
                                             Date:   [To be determined]
17                                           Time:   [To be determined]
                                             Place:  U.S. Courthouse
18                                                   Courtroom 1568
                                                     255 E. Temple Street
19                                                   Los Angeles. CA 90012

20  **TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE,**

21  **THE DEBTOR AND OTHER PARTIES IN INTEREST:**

22       **PLEASE TAKE NOTICE** that Timothy Yoo ("Yoo"), the duly appointed and acting

23  chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of the above-captioned

24  debtor Allora Holdings, LLC, a Delaware limited liability company, (the "Debtor"), in Case No.

25  2:21-bk-15204-BB (the "Bankruptcy Case"), will move (the "Motion ") for the issuance of an order

26  of the Court which approves a compromise of controversy as documented in that written agreement

27  (the "Agreement") a true and correct copy of which is attached hereto and incorporated herein as

28  **Exhibit A**, in which the parties (the "Parties") are (i) the Trustee on the one hand, and (ii) Ilon

C:\Users\BMS\Desktop\BLC\Allora\Allora Pleadings\9019 Motion.docx

1   Consulting Corporation, a Florida corporation ("Ilon"),  (iii) Slava Furman, an individual ("Slava")

2   and (iv) Diana Furman, an individual ("Diana") on the other hand.  Sewby LLC, a California limited

3   liability company ("Sewby"), Biothread, LLC, a Pennsylvania LLC ("Biothread"); and Ms. Jaleh

4   Factor ("Factor") are not parties to, nor beneficiaries of, this Agreement and are not being released

5   hereto.  Ilon, Slava and Diana and their respective heirs, successors, assigns, affiliates, members,

6   managers, representatives, and/or agents shall be referred to collectively as the "Furman Parties".

7   By the Motion, the Trustee also seeks authority to sign all documents necessary to effectuate the

8   Agreement.  The Motion is made pursuant to Fed. R. Bankr. P. 9019 and Local Bankruptcy Rule

9   ("LBR") 9013-1(o).

10      **PLEASE TAKE FURTHER NOTICE** that under Local Bankruptcy Rule 9013-1(o), any

11  response and request for hearing on the Motion must be in the form required by Local Bankruptcy

12  Rule 9013-1, filed with the Clerk of the United States Bankruptcy Court, located at 255 E. Temple

13  Street, Los Angeles CA 90012 (the "Clerk's Office"), and served upon the Trustee's counsel, whose

14  address appears in the upper left corner of the first page of this Notice, no later than fourteen (14)

15  days from the date of service of this Notice.  The Trustee will set a hearing date and send out notice

16  thereto if any such response is timely received.  No hearing will be held if no response and request

17  for hearing is received.  You may obtain copies of all pleadings in the Bankruptcy Case from the

18  Clerk's Office.

19  Date: December 27, 2021                    LAW OFFICES OF WESLEY H. AVERY, APC

20

21                                            Wesley H. Avery, Esq.

22                                            Lucy Mavyan, Esq.
                                             Attorneys for Timothy Yoo
23                                            Chapter 7 Trustee

24

25

26

27

28

## MOTION

The Trustee hereby moves for the issuance of an order approving the Agreement based on the following facts:

1.  Yoo is the duly appointed and acting chapter 7 trustee of the bankruptcy estate (the "Estate") of the Debtor in the Bankruptcy Case.  The Debtor filed a voluntary chapter 7 bankruptcy petition on June 25, 2021 (the "Petition Date").  Pursuant to the Agreement, the Furman parties will not file a proof of claim in the Bankruptcy Case.

2.  As of the Petition Date the Debtor is the plaintiff and a counter-defendant in that pending lawsuit styled Allora Holdings, LLC v. Ilon Consulting, Corp. et al, Case No. 2020-021724-CA-01 (Miami-Dade County, Fla.) (the "Lawsuit"), Ilon, Slava and Diana are defendants and counter-plaintiffs in the Lawsuit, and MasQd, a Florida limited liability company (the "Company") is a nominal defendant in the Lawsuit.  Slava is a manager of the Company.

3.  Ms. Marta Alfonso (the "Receiver") has been appointed as the receiver of the Company.  On March 17, 2021, by filing # 123260140 the Receiver filed a report (the "Report") in the Lawsuit, a true and correct copy of which is attached hereto and incorporated herein as **Exhibit 1 to Exhibit A**.  *Inter alia*, the Report lists claims: (i) for unlawful distributions from the Company to its members, the Debtor, Ilon and Diana; and (ii) for breaches of fiduciary duty by Slava and Factor to the Company.  The Furman Parties dispute all of the claims asserted by the Debtor in the Lawsuit as well as the claims listed in the Report.  The Receiver has filed a proof of claim in the amount of $2,514,910 in the Bankruptcy Case.  The Furman Parties have filed a proof of claim in the amount of $3,000,000 in the Bankruptcy Case that shall be withdrawn upon approval of the Agreement.

4.  The Debtor has asserted claims and made allegations against the Furman Parties in the Lawsuit arising out of their relationship with MASKC, LLC, a Florida limited liability company ("MASKC"), including, but not limited to, claims for breach of fiduciary duty against the Furman Parties in connection with MASKC.

5.  The Parties, in the interest of avoiding the cost, time, expense, and uncertainty of litigation, by the Agreement now desire to resolve any and all disputes, claims, and controversies by

1 and between them, including, but not limited to, those raised by the Debtor in the Lawsuit

2 and/or claims which could have been made against the Furman Parties and MASKC directly

3 by the Debtor, upon the terms and conditions of this Agreement, without any admission by

4 any Party hereto of any liability or wrongdoing or impropriety, or lack thereof, of any kind,

5 and to enter into general mutual releases. Upon the execution of this Agreement, the Furman

6 Parties shall pay the Trustee $177,500 in certified funds (the "Settlement Proceeds"), which

7 are currently being held in trust by Marco & Sitaras PLLC, as counsel for the Furman Parties

8 (the "Escrow Agent"), pending Court approval of the Agreement. Upon Court approval, the

9 Escrow Agent will pay the Settlement Proceeds to the Trustee. If Court approval is denied,

10 then the Escrow Agent will return the Settlement Proceeds to the Furman Parties, and the

11 Settlement Agreement will be terminated, without prejudice to the parties' rights, claims,

12 and defenses in this Bankruptcy Case or the Lawsuit. If the Agreement is not approved by

13 the Court, the Settlement Proceeds shall be returned to the Furman Parties within ten (10)

14 business days of the entry of the order disapproving same. Upon approval of the Agreement,

15 the Escrow Agent shall release and pay the funds to the Trustee.

16     6.     Through November 30, 2021, the estimated administrative claims of the Trustee's counsel

17 is $24,000, and the estimated administrative claim of the Trustee's accountants is $14,700.

18     The Motion is based upon the attached Memorandum of Points and Authorities, the attached

19 declarations of the Trustee and his financial advisor Jeffrey L. Sumpter, CPA, the attached exhibit, and upon

20 such other evidence as the Court may consider. The Motion is made upon the grounds that approval of the

21 Agreement is in the best interests of the Estate and its creditors. The Motion is made pursuant to Fed. R.

22 Bankr. P. 9019(a) and LBR 9013-1(o).

23     **WHEREFORE**, the Trustee respectfully request that the Motion be granted and the Agreement

24 approved.

25 Date: December 27, 2021                       LAW OFFICES OF WESLEY H. AVERY, APC

26

27                                        Wesley H. Avery, Esq.
                                       Lucy Mavyan, Esq.

28                                        Attorneys for Timothy Yoo
                                       Chapter 7 Trustee

## MEMORANDUM OF POINTS AND AUTHORITIES

"On motion by the trustee and after a hearing on notice to creditors, the United States Trustee, the debtor and indentured trustees as provided in Rule 2002 and as such other entities as the court may designate, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Approval of a proposed compromise turns on whether the compromise is in "the best interests of the estate." St. Paul Fire & Marine Insurance Co. v. Vaughn, 779 F.2d 1003, 1010 (4th Cir. 1985); In re Continental Investment Corp., 637 F.2d 8, 11 (1st Cir. 1980).

Specifically, in evaluating whether to approve a compromise, the Court must consider the following:

(a)     The probability of success in litigation;

(b)     the difficulties, if any, to be encountered in the matter of collection;

(c)     the complexity of the litigation involved and the expense, inconvenience and delay necessary attaining it;

(d)     the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

In re MGS Marketing, 111 B.R. 264, 267 (Bankr. 9th Cir. 1990); Martin v. Robinson (In re A&C Properties), 784 F.2d 1377, 1381 (9th Cir. 1986) cert. denied, 479 U.S. 854, 107 S. Ct. 189 (1986). In considering these factors, the courts are guided by two principles.

First, "the law favors compromise." Ports O'Call Investment Co. v. Blair (In re Blair), 538 F.2d 849, 851 (9th Cir. 1976).

Compromises "are favored in bankruptcy," 9 Collier on Bankruptcy § 9019.03 at 9019-3 (15th ed. 1988), and have become "a normal part of the process of reorganization." Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc. v. Anderson, 390 U.S. 414, 424, 88 S. Ct. 1157 (1968) quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939).

Second, a compromise should be approved unless it "fall[s] below the lowest point in the range of reasonableness." Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2nd Cir. 1983), cert. denied 464 U.S. 822, 104 S. Ct. 88 (1985). As that court aptly commented:

> [The] responsibility of the bankruptcy judge, and ours upon review, is not to decide the numerous questions of law and fact raised by the appellants but rather to canvass the issues and see whether the settlement fall[s] 'below the lowest point in the range of reasonableness. . . .'

In re W.T. Grant Co., 699 F.2d at 608, cert. denied 409 U.S. 1039, 73 S.Ct. 521 (1972).

The compromise approval process does not contemplate that a bankruptcy court will substitute its business judgment for that of a chapter 7 trustee. To the contrary, a settlement that has been negotiated by a trustee, as representative of the estate, is entitled to deference. See In re Morrison, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987) ("The objecting creditors may not substitute their judgment for that of the Trustee.").

By the Agreement, the administration of the Lawsuit is resolved and the Trustee believes that the Settlement Proceeds will result in a meaningful distribution to creditors. Because the net value of the Lawsuit is being paid to the Estate through the Settlement Proceeds, the Trustee has concluded that the Estate cannot achieve a better result than the Agreement, and approval of the Agreement therefore appears in the reasonable business judgment of the Trustee to be in the best interests of the Estate. For this reason, the Trustee requests that the Motion be granted. See the attached Declaration of the Trustee at ¶ 10. See also Declaration of Jeffrey L. Sumpter, *passim*.

Date: December 27, 2021          LAW OFFICES OF WESLEY H. AVERY, APC

Wesley H. Avery, Esq.
Lucy Mavyan, Esq.
Attorneys for Timothy Yoo
Chapter 7 Trustee

## DECLARATION OF THE TRUSTEE

I, Timothy Yoo, declare:

1.    I am the duly appointed and acting chapter 7 trustee ("Trustee") of the bankruptcy estate (the "Estate") of Allora Holdings, LLC, a Delaware limited liability company, (the "Debtor"), in Case No. 2:21-bk-15204-BB (the "Bankruptcy Case"). I have personal knowledge, information or belief of the facts set forth below, and, if called as a witness, could competently testify thereto under oath.  This declaration is made in support of the attached motion (the "Motion") for the issuance of an order of the Court which approves a compromise of controversy as documented in that written agreement (the "Agreement") a true and correct copy of which is attached hereto and incorporated herein as **Exhibit 1**, in which the parties are (i) the Trustee on the one hand, and (ii) ) Ilon Consulting Corporation, a Florida corporation ("Ilon"), (iii) Slava Furman, an individual ("Slava") and (iv) Diana Furman, an individual ("Diana") on the other hand.  Sewby LLC, a California limited liability company ("Sewby"), Biothread, LLC, a Pennsylvania LLC ("Biothread"); and Ms. Jaleh Factor ("Factor") are not parties to, nor beneficiaries of, this Agreement and are not being released hereto.  Ilon, Slava and Diana and their respective heirs, successors, assigns, affiliates, members, managers, representatives, and/or agents shall be referred to collectively as the "Furman Parties".  By the Motion, the Trustee also seeks authority to sign all documents necessary to effectuate the Agreement.

2.    I am the duly appointed and acting chapter 7 trustee of the bankruptcy estate (the "Estate") of the Debtor in the Bankruptcy Case.  The Debtor filed a voluntary chapter 7 bankruptcy petition on June 25, 2021 (the "Petition Date").

3.    Pursuant to the Agreement, the Furman parties will not file a proof of claim in the Bankruptcy Case.

4.    As of the Petition Date the Debtor is the plaintiff and a counter-defendant in that pending lawsuit styled Allora Holdings, LLC v. Ilon Consulting, Corp. et al, Case No. 2020-021724-CA-01 (Miami-Dade County, Fla.) (the "Lawsuit"), Ilon, Slava and Diana are defendants and counter-plaintiffs in the Lawsuit, and MasQd, a Florida limited liability company (the "Company")

1   is a nominal defendant in the Lawsuit. Slava is a manager of the Company.

2        5.    Ms. Marta Alfonso (the "Receiver") has been appointed as the receiver of the

3   Company. On March 17, 2021, by filing # 123260140 the Receiver filed a report (the "Report") in

4   the Lawsuit, a true and correct copy of which is attached hereto and incorporated herein as **Exhibit**

5   **1 to Exhibit A**. *Inter alia*, the Report lists claims: (i) for unlawful distributions from the Company

6   to its members, the Debtor, Ilon and Diana; and (ii) for breaches of fiduciary duty by Slava and

7   Factor to the Company. The Furman Parties have filed a proof of claim in the amount of $3,000,000

8   in the Bankruptcy Case that shall be withdrawn upon approval of the Agreement.

9        6.    The Debtor has asserted claims and made allegations against the Furman Parties in

10   the Lawsuit arising out of their relationship with MASKC, LLC, a Florida limited liability company

11   ("MASKC"), including, but not limited to, claims for breach of fiduciary duty against the Furman

12   Parties in connection with MASKC.

13        7.    The Parties, in the interest of avoiding the cost, time, expense, and uncertainty of

14   litigation, by the Agreement now desire to resolve any and all disputes, claims, and controversies

15   by and between them, including, but not limited to, those raised by the Debtor in the Lawsuit and/or

16   claims which could have been made against the Furman Parties and MASKC directly by the Debtor,

17   upon the terms and conditions of this Agreement, without any admission by any Party hereto of any

18   liability or wrongdoing or impropriety, or lack thereof, of any kind, and to enter into general mutual

19   releases.

20        8.    Upon the execution of this Agreement, the Furman Parties shall pay the Trustee

21   $177,500 in certified funds (the "Settlement Proceeds") to be held in trust by Marco & Sitaras PLLC,

22   as counsel for the Furman Parties (the "Escrow Agent") pending Court approval of the Agreement.

23        9.    If the Agreement is not approved by the Court, the Settlement Proceeds shall be

24   returned to the Furman Parties within ten (10) business days of the entry of the order disapproving

25   same. Upon approval of the Agreement, the Escrow Agent shall release and pay the funds to the

26   Trustee.

27

28

1      10.    By the Agreement, the administration of the Lawsuit is resolved and I believe that

2  the Settlement Proceeds will result in a meaningful distribution to creditors. Because the net value

3  of the Action is being paid to the Estate through the Settlement Proceeds, I have concluded that the

4  Estate cannot achieve a better result than the Agreement, and approval of the Agreement therefore

5  appears in a reasonable exercise of my business judgment to be in the best interests of the Estate.

6  For this reason, I request that the Motion be granted.

7      Executed this 21st day of December 2021, at Los Angeles, California.

Timothy Yoo

I, Jeffrey L. Sumpter, declare:

**Introduction**

1.      I am a Managing Director at Menchaca & Company LLP ("M&C") and am in charge of handling this engagement for the firm. M&C has been engaged by the Trustee in the above-captioned bankruptcy case to provide financial advisory, expert witness and consulting services.

2.      I am a Certified Public Accountant licensed in the states of Arizona and Nevada, am an attorney licensed in the state of California, and have been handling bankruptcy matters for clients, including trustees, as their CPA, expert witness or attorney for over 30 years. The statements made herein are based upon my own knowledge, except as to those matters that are believed to be true based upon information and belief. As to those matters, I would and could testify competently thereto.

3.      During the pendency of the above-captioned Debtor's Chapter 7 case, the Trustee reached a settlement with the Furman Parties as set forth in the Settlement Agreement and Mutual Global Release between the Trustee and Furman Parties ("Agreement" or "Settlement Agreement") subject to Court approval. Pursuant to the Agreement, the Trustee is to receive $177,500 from the Furman Parties along with a waiver of claims. The Trustee has requested that I give my opinions set forth herein to assist the Court in the determination as to whether the proposed Settlement Agreement is fair and equitable and in the best interest of the estate.

4.      I am submitting this declaration on behalf of the Trustee relative to my opinions set forth herein. All of my opinions are based on my education, training, experience, research, analysis and investigation of this case, and the opinions expressed

1

are to a reasonable degree of certainty as a financial expert in the fields of accounting and bankruptcy, as more fully set forth in the following paragraphs. I understand that additional information may hereafter be provided to me for consideration or additional information may be discovered from documents provided thus far, and I reserve the right to refine or revise my opinions, if warranted, and prepare summaries, graphical exhibits and charts.

**Summary and Opinions**

1.      I have analyzed the Reveiver's Report regarding Potential Litigation Claims of the Company (MasQd, LLC) and Receivership Estate, filed on March 17, 2021; Verified Third Party Claims Against Sewby LLC, Jaleh Factor and MasQd LLC asserted by Ilon Consulting Corporation, Slava Furman and Diana Furman; the Debtor's general ledgers, bankruptcy petition and schedules; the Settlement Agreement; claims and allegations asserted by the Debtor in the Lawsuit referred to in the Settlement Agreement;  four proof of claims filed in the Debtor's case as of December 18, 2021; and other pleadings and records related to the Debtor's case. I have also consulted with the Trustee and his counsel and personnel of M&C. Based on my review of the documents produced and information provided to me for consideration and obtained through research, discussions with personnel of M&C and the Trustee and his counsel, and my analysis described herein, the following are my key opinions:

A.      The proposed settlement does not fall below the lowest point in the range of reasonableness.

B.      The proposed settlement is fair and equitable and in the best interest of the estate.

2

**Basis for Expert Opinions**

**A.    Analysis.**

1.    The Receiver has reported that $4,900,000 in improper distributions were made from the Company to the members and alleges that the Company was mismanaged by Ms. Factor and S. Slava and that they breached their fiduciary duty to the Company. The Trustee's Settlement Agreement states that the settlement is with the Furman Parties and that Sewby LLC, a California limited liability company ("Sewby"), Biothread, LLC, a Pennsylvania LLC ("Biothread"); and Ms. Jaleh Factor ("Ms. Factor") are not parties to, nor beneficiaries of, the Agreement and are not being released.

2.    The Debtor's bankruptcy estate holds a 50% ownership interest in the Company. From my review of the records and related information provided to and analyzed by me thus far, it appears that the Trustee's claims against the Furman Parties as outlined in the Receiver's Report are derived from the alleged mismanagement of the Company and $4,900,000 in improper distributions, which are potentially recoverable by the Receiver in the Company's pending Florida receivership for the benefit of creditors and other claimants in that matter.

3.    If the Trustee were to proceed to seek recoveries from the Furman Parties in the Debtor's present bankruptcy case, the litigation would involve very complex business litigation and require significant discovery and forensic investigation and records reconstruction services, potentially costing the bankruptcy estate hundreds of thousands of dollars in legal, accounting and other professional fees and expenses. Each of the former managers of the Company, S. Slava and Ms. Factor, are apparently accusing each other of wrongdoing, claiming that the other one was mismanaging the Company. The litigation

3

would likely cause a lengthy delay of at least 4 years in the administration of the case if the Trustee elected to pursue recoveries from the Furman Parties, which has an uncertain outcome, thereby causing both inconvenience and delay to the Debtor's creditors who would need to wait for a distribution, if any, at the end of the case. The present Settlement Agreement avoids the potentially lengthy and expensive litigation process and provides a certain recovery for the bankruptcy estate now rather than waiting for an uncertain recovery at some point in the future. That coupled with the probability of success being speculative and potential collection difficulties even if the litigation were successful, the complexity, expense, inconvenience and delay of the litigation, along with keeping the paramount interests of the Debtor's creditors in mind, illustrates that the Trustee's proposed settlement is above the lowest point in the range of reasonableness. Based on the forgoing, under the circumstances of the present case, the Settlement Agreement is fair and equitable and in the best interest of the estate.

### Qualifications

Prior Expert Testimony.

A.    Deposition Testimony

1.    Fox v. Lichter (Los Angeles Superior Court – SC 062176)

2.    Gosnell v. Weingarten (San Diego Superior Court)

3.    Fisher v. Rubin (Seatel Hotels) (Los Angeles Superior Court)

4.    In re Unidial (Los Angeles Superior Court)

5.    In re Freedman (United States Bankruptcy Court – LA03-37738 TD; Adv. No. 05-02252 TD)

4

6.    Amino v. Guest-Tek (USDC – CV-07-1829)

7.    In re Shooting Star, LLC (United States Bankruptcy Court – Case No. 3:11-bk-02515-GBN; Adv. No. 3:13-ap-00106-GBN)

8.    Transportation Alliance Bank v. BancInsure, Inc. (USDC – District of Utah, Case No. 1:11-cv-00148-DAK)

9.    Greenwood v. Compucredit (USDC – Case No. 4:08-cv-4878)

10.    In re Santa Fe Medical Group, LLC ((United States Bankruptcy Court – Case No. Case No. 15-11247-t7 Adversary No. 16-01051-T)

11.    Southwest Holdings v. Ayers & Brown, (United States Bankruptcy Court, Case No. 2:14-bk-18253-EPB)

12.    In re Mihranian (United States Bankruptcy Court – Case No. 2:13-bk-39026-BR) - Expert declaration and deposition

13.    Adams Aviation Services, Inc. Trustee, et al., Plaintiffs, v. Lycon Inc. of Arizona, et al., Defendants (Superior Court Of the State of Arizona, County of Maricopa - No. CV201S-006630).


B.    <u>Court Testimony</u>

1.    In re Woods (United States Bankruptcy Court)

2.    In re Unidial (Los Angeles Superior Court)

3.    Fox v. Lichter (Los Angeles Superior Court – SC 062176)

4.    Gosnell v. Weingarten (San Diego Superior Court)

5.    Fisher v. Rubin (Seatel Hotels) (Los Angeles Superior Court)

6.    In re Newman (United States Bankruptcy Court – LA03-36343 BR; Adv. No.

05-01494 BR)

7.    In re Hany Malek (United States Bankruptcy Court and Los Angeles Superior Court – Case no. LC 083 095)

8.    In re Gregory S. Hancock (United States Bankruptcy Court – 2-08-14253-GBN) – expert declaration

9.    Kosmala v. Medali et al (In re Medali), Adv. No. 8:09-ap-01778-RK – Expert declaration

10.    Greenwood v. Compucredit Corp., USDC – Case No. 4:08-cv-4878 – Expert declaration

11.    In re GAF Management, LLC (United States Bankruptcy Court - Case No. 2:10-bk-11029 RN; Adv. No. 2:10-ap-1105 RN) – Expert declaration

12.    In re Aniko Kaye (United States Bankruptcy Court - Case No. 2:09-bk-38287 BR) – Expert declaration

13.    In re Aurora and Daniel Garoian (United States Bankruptcy Court - Case No. 2:10-bk-20883-EC )

14.    Forrest Sheppard v. Pishit S. Patel (USDC – District of Arizona – Case No. 3:11-cv-08146-NVM)

15.    In re Sanoho Development LLC USDC – Case No. 2:14-bk-25908 BB

16.    In re John Moore (United States Bankruptcy Court – Case No. 9:13-bk-10573-PC) – Expert declaration

17.    In re Southwest Holdings Group, LLC (United States Bankruptcy Court – Case No. 2:14-bk-18253-EPB) – Expert declaration

18.    In re Aspiazu (United States Bankruptcy Court – Case No. 2:14-bk-28392-ER

and Adv. No. 2:15-ap-01052-ER)

19.    Christian Credit Counselors, Inc. v. Globaltribe International (Superior Court, State of California, County of San Diego) – Case No. 37-2014-00010267-CU-BC-CTL (Arbitration)

20.    In re Thomas (United States Bankruptcy Court - Case No. 2:12-bk-   28755-ER) – Expert declarations

21.    In re Mihranian (United States Bankruptcy Court – Case No. 2:13-bk-39026-BR)

22.    In re O'Connor (United States Bankruptcy Court – Case No. 2:14-bk-15018 BR) – Expert declaration

23.    In re Santa Fe Medical Group, LLC (United States Bankruptcy Court – Case No. 15-11247-t7; Adv. No. 16-01051-T)

24.    In re  State vs. Babbitt (Maricopa Co. Sup. Crt. No. CR2014-120137-001)

25.    In re Kody Branch of California, Inc. (United States Bankruptcy Court – Case No. 2:17-bk-23722-RK)


Publications

1.    The Witness Chair, "The Bankruptcy Employment and Fee Application Process", Summer 2002.

2.    California Society of Certified Public Accountants, "The Bankruptcy Employment and Fee Application Process", September 2002.

3.    American Bankruptcy Institute, "The Expectation Chasm;   A Forensic Accountant's Approach", December 2002.

7

4. AZ CPA, "Avoidance of a Secured Loan as a Fraudulent Conveyance", January 2014.

5. Transaction Advisors, "Avoiding Fraudulent Conveyance", May 2014.

6. AZ CPA, "Dealing With Daubert", September 2015.

7. National Business Institute, "Substantive Consolidation – The Alternative Remedy", June 2016.

Compensation

The compensation to be paid for work performed by me and the professionals assisting me under my supervision is based upon the actual time expended at the standard hourly rates for the individuals assigned to the engagement. Fees for my services are at the hourly rate of $535. Fees for other personnel are at hourly rates ranging from $200 to $535.

Biography

The following is a biographical outline of my professional qualifications:

Jeffrey L. Sumpter, CPA, JD, CIRA

Mr. Sumpter is a Managing Director of Menchaca & Company LLP. He has been a licensed attorney for over 30 years and a certified public accountant for over 35 years. He specializes in litigation support and consultation, bankruptcy case administration, business restructuring, real estate sales, Chapter 11 plan feasibility and liquidation analysis, solvency analysis, claim resolutions, distressed business valuations, taxation, fraud investigations, forensic accounting, avoidable transfer recoveries and asset tracing. He

8

has experience working in the spheres of real estate, manufacturing, retail, transportation, telecommunications, construction, banking, government, trusts, restaurants, medical providers, hotels, gaming, insurance, entertainment and environmental.

Mr. Sumpter has extensive experience in fiduciary administration, forensic investigations, economic damages, restructuring, reporting and consultation services in over 10,000 cases involving fraud, contract disputes, turnarounds, wage and hour disputes, records reconstruction, bankruptcy administration, accounting irregularities, fiduciary breaches, fraudulent transfers, solvency analysis, lost earnings, wrongful death, legal malpractice, punitive damages and Ponzi schemes. He has represented businesses in out-of-court resolutions as well as creditors, trustees, committees, and debtors in bankruptcy cases. He has been a Court appointed Chapter 11 trustee and examiner, and been engaged by school districts, real estate developers, hotels, casinos, insurance carriers, banks, trusts and pension, health and welfare plans in California, Nevada, and Arizona for audit, tax, contract compliance, and forensic engagements.

The following are some of the representative assignments Mr. Sumpter has performed and supervised over the past 30 years:

- Court appointed Chapter 11 trustee in Phoenix, Arizona, in consolidated real estate cases: In re Wildmint 615, LLC and Rector 42, LLC (Case Nos. 2:06-bk-936 RTB and 2:06-bk-937 RTB).
- Provided forensic accounting services for a trust, to investigate and report on

alleged misappropriations of assets involving numerous closely held business ventures. The businesses were primarily involved with commercial and residential real estate acquisition and financing, development and construction, along with casinos and loan transactions with the various businesses and individual family members. Upon conclusion of the investigation, over $40,000,000 in alleged asset misappropriations had been discovered.

- Provided litigation advisory, investigation and expert witness services relative to punitive damages phase of multi-million dollar real estate development breach of fiduciary duty litigation. Engagement required detailed analysis of the defendants' business and personal records, preparation of schedules of assets, liabilities, income and net worth for trial testimony, consultation with counsel relative to disputed discovery requests and opposing expert's deposition, and expert witness testimony at trial.

- Provided litigation advisory, investigation and expert witness services relative to breach of contract litigation involving telecommunication network services for hotels across the United States and Canada. Engagement required detailed analysis of the hotel networks, financial records, opposing expert reports and related schedules, preparation of rebuttal report and expert testimony.

- Court-appointed examiner for a multi-million dollar hotel located in Phoenix, Arizona, to investigate and report on management services rendered, propriety of fees charged, and claims to litigation settlement proceeds by bankruptcy estate and secured creditor.

- Provided contract audit services for the Los Angeles Unified School District.

Engagement involved over 50 different multi-million dollar projects including cost incurred audits, due diligence investigations, CAM audits, cost surveys and performance audits requiring reporting under GAGAS.

- Provided expert witness testimony involving a multi-million dollar estate, with fraudulent divorce, family trust and related transfers of real estate and stock ownership of a supermarket in Southern California that catered to the entertainment industry. Engagement required detailed analysis of market operations and tracing of personal and business transfers. Provided expert testimony to establish fraudulent divorce and recover fraudulent transfers.

- Engaged to provide expert witness testimony involving real estate fraud and transfer avoidance litigation and the reasonableness of a $3.5 million settlement offer. Engagement required in depth analysis of real estate valuations, liens, bank account transfers, litigation costs, statute of limitations, tax ramifications, and affirmative defenses, and required preparation of related expert report and Court testimony.

- Provided litigation support services relative to fraudulent conveyance litigation over a $285 million acquisition of a workers compensation insurance company. Provided insolvency analysis and evaluated the debtor's receipt of less than reasonably equivalent value for the consideration paid and obligations assumed; analyzed the debtor's assets, liabilities, capital, and ability to pay debts as they matured; and prepared the corresponding expert witness report.

- Provided litigation advisory services and expert testimony involving a breach of fiduciary duty, accounting irregularities, corporate dissolution and fraud lawsuit

11

involving a Los Angeles nightclub. Analyzed business records, prepared schedules relative to asset transfers, provided lost profit calculations, and provided expert witness testimony at trial.

- Engaged to provide litigation support in a fraud case involving several hundred defrauded investors in entities conspiring in various real estate scams, with assets exceeding $10 million. Analyzed business records and provided expert testimony for counsel to locate, recover and liquidate hidden assets, including $1 million in jewelry and funds transferred through other entities to foreign accounts.

- Engaged to evaluate all commercial real estate operational issues as well as negotiate and implement a Chapter 11 reorganization plan. Integrally involved in litigation and subsequent settlement negotiations with secured creditor over cash collateral, valuation, cramdown, and plan feasibility issues.

- Analyzed bank lending transactions and traced intercompany transfers relative to $80 million fraudulent transfer litigation in order to support several defenses on behalf of a commercial bank. Successfully limited lender's liability through settlement.

- Provided expert testimony involving a multi-million dollar airplane parts distribution corporation. Investigation uncovered in excess of $2,000,000 in disputed liens and avoidable transfers.

- Represented the Chapter 11 trustee of a tax shelter company involving over 700 defrauded investors. Oversaw the litigation of the disputed investor claims to the estate's property, including uranium mining rights in real property located in New

12

Mexico, negotiated the sale of the estate's property and obtained plan confirmation.

- Represented the trustee of a multi-million dollar company involved in gold and silver bullion investment schemes. Oversaw the litigation of disputed investor claims of ownership to the bullion and liquidation of the estate's bullion reserves.

- Provided expert testimony relative to the bankruptcy estate's litigation to recover the estate's share of proceeds from settlements of lawsuits pending as of the petition date. Also engaged to provide litigation support relative to the recovery of hidden assets and avoidable transfers of estate assets.

Education

- B.B.A. – Business Administration, Accounting, Western Michigan University, magna cum laude, 1978

- J.D. - Juris Doctor, University of the Pacific, McGeorge School of Law, Order of the Coif, Prentice Hall Outstanding Tax Student, 1984

Professional Licenses and Memberships:

- Certified Public Accountant – Nevada and Arizona

- Certified Distressed Business Valuation Specialist

- Certified Bankruptcy Law Specialist

- Certified Insolvency and Restructuring Advisor

- Association of Insolvency and Restructuring Advisors

- American Institute of Certified Public Accountants

- Certified in Financial Forensics
- State Bar of California Bar

Professional Work Experience

- Menchaca & Company LLP – June 2021 to present
- CBIZ Valuation Group, LLC – November 2009 to June 2021
- Arizona State University (Associate Professor – Forensic Accounting) – January 2018 to March 2021
- Stonefield Josephson, Inc. – May 2003 to November 2009
- KPMG LLP – August 1998 to May 2003
- Biggs & Company – June 1996 to August 1998
- Tax Consulting Group – June 1994 to June 1996
- Danning, Gill, Diamond & Kollitz – September 1986 to June 1994
- Haight, Dickson, Brown & Bonesteel – September 1984 to September 1986
- Main, LeFranz & Company – June 1978 to August 1981

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on December 20 , 2021 in Phoenix, Arizona.

Jeffrey L. Sumpter

14

Exhibit A

## SETTLEMENT AGREEMENT AND MUTUAL GLOBAL RELEASES

This settlement agreement (the "Agreement") is entered into by and among the following three parties (collectively, the "Parties"): (i) Timothy J. Yoo ("Yoo"), the duly appointed and acting chapter 7 trustee (the "Trustee") of the bankruptcy estate of Allora Holdings, LLC, a Delaware limited liability company (the "Debtor") in Bankr. No. 21-bk-15204-BB (the "Bankruptcy Case") now pending in the Bankruptcy Court for the Central District of California (the "Court") on the one hand, and (ii) Ilon Consulting Corporation, a Florida corporation ("Ilon"), , (iii) Slava Furman, an individual ("Slava") and (iv) Diana Furman, an individual ("Diana") on the other hand. Sewby LLC, a California limited liability company ("Sewby"), Biothread, LLC, a Pennsylvania LLC ("Biothread"); and Ms. Jaleh Factor ("Factor") are not parties to, nor beneficiaries of, this Agreement and are not being released hereto. Ilon, Slava and Diana and their respective heirs, successors, assigns, affiliates, members, managers, representatives, and/or agents shall be referred to collectively as the "Furman Parties". The Parties are entering into the Agreement based on the following recitals of fact.

## I.
## FACTUAL RECITALS

A.    **WHEREAS,** Yoo is the duly appointed and acting chapter 7 trustee of the bankruptcy estate (the "Estate") of the Debtor in the Bankruptcy Case. The Debtor filed a voluntary chapter 7 bankruptcy petition on June 25, 2021 (the "Petition Date").

B.    **WHEREAS,** the Furman parties will not file a proof of claim in the Bankruptcy Case.

C.    **WHEREAS,** as of the Petition Date the Debtor is the plaintiff and a counter-defendant in that pending lawsuit styled <u>Allora Holdings, LLC v. Ilon Consulting, Corp. et al</u>, Case No. 2020-021724-CA-01 (Miami-Dade County, Fla.) (the "Lawsuit"), Ilon, Slava and Diana are defendants and counter-plaintiffs in the Lawsuit, and MasQd, a Florida limited liability company (the "Company") is a nominal defendant in the Lawsuit. Slava is a manager of the Company.

D.    **WHEREAS,** Ms. Marta Alfonso (the "Receiver") has been appointed as the receiver of the Company. On March 17, 2021, by filing # 123260140 the Receiver filed a report (the "Report") in the Lawsuit, a true and correct copy of which is attached hereto and incorporated herein as **Exhibit 1**. *Inter alia*, the Report lists claims: (i) for unlawful distributions from the Company to the Debtor, Slava and Ilon; and (ii) for breaches of fiduciary duty by Slava to the Company.

E.    **WHEREAS,** the Debtor has asserted claims and made allegations against the Furman Parties in the Lawsuit arising out of their relationship with MASKC, LLC, a Florida limited liability company ("MASKC"), including, but not limited to, claims for breach of fiduciary duty against the Furman Parties in connection with MASKC;

F.    **WHEREAS,** the Parties, in the interest of avoiding the cost, time, expense, and uncertainty of litigation, now desire to resolve any and all disputes, claims, and controversies by

and between them, including, but not limited to, those raised by the Debtor in the Lawsuit and/or claims which could have been made against the Furman Parties and MASKC directly by the Debtor, upon the terms and conditions of this Agreement, without any admission by any Party hereto of any liability or wrongdoing or impropriety, or lack thereof, of any kind; and

NOW THEREFORE, for good and valuable consideration and the mutual covenants and agreements set forth herein, and subject to Court approval upon notice to creditors pursuant to Fed. R. Bankr. P. 9019, the Trustee on the one hand, and the Furman Parties on the other hand, have agreed to enter into this Agreement and exchange general mutual releases on the following terms and conditions:

1.      Upon the execution of this Agreement, the Furman Parties shall pay the Trustee $177,500 in certified funds (the "Settlement Proceeds") to be held in trust by Marco & Sitaras PLLC, as counsel for the Furman Parties (the "Escrow Agent") pending Court approval of the Agreement.

2.      If the Agreement is not approved by the Court, the Settlement Proceeds shall be returned to the Furman Parties within ten (10) business days of the entry of the order disapproving same. Upon approval of the Agreement, the Escrow Agent shall release and pay the funds to the Trustee.

3.      The Parties shall enter into a general mutual release.

## II.
## AGREEMENT

**NOW WHEREFORE**, in consideration of the above Recitals and agreements contained herein and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties agree as follows:

A.      <u>Recitals</u>. The Recitals above are incorporated herein by this reference as though set forth in full and the parties agree that the information is true and correct.

B.      <u>Definition</u>. The word "Claims" shall mean any and all manner of action or actions, causes of action in law or in equity, suits, debts, liens, contracts, agreements, promises, liability, claims, demands, damages, losses, costs, expenses, judgments, liens, lien rights, obligations, sums of money, trespasses or torts, whether presently existing or arising in the future of any nature whatsoever, known or unknown, liquidated or unliquidated, fixed or contingent, whether asserted directly or indirectly as a derivative action, affirmatively or by way of defense or offset, as between the Debtor, the Trustee and the Estate and/or(1) the Furman Parties, and (2) MASKC and/or its affiliates, members, managers, agents, representatives, consultants and/or persons acting on its behalf (collectively, "MASKC") arising from the beginning of time until the date of execution of this Agreement. The word "Claims" shall not be deemed to cover or include claims or causes of action by or against Sewby, Biothread and/or Factor.

C.    <u>Consideration.</u>

       1.    Upon the execution of this Agreement, the Furman Parties shall pay the Escrow Agent the Settlement Proceeds pending Court approval of the Agreement in consideration for the mutual general releases stated below.

       2.    If the Agreement is not approved by the Court, the Settlement Proceeds shall be returned to the Furman Parties within ten (10) business days of the entry of the order disapproving same.

D.    <u>Court Approval.</u>  This Agreement is subject to Court approval, which the Trustee shall use his best efforts to obtain.

E.    <u>Release of Claims against the Estate, the Trustee and his Professionals, and the Debtor.</u>  In consideration for the promises contained in this Agreement, and except for the rights and obligations contained in or arising out of this Agreement, the Furman Parties and all others through them hereby release the Estate, the Trustee, and each of the Trustee's attorneys, accountants, employees, agents and assigns, from any and all Claims.

F.    <u>Release of Claims against the Furman Parties and MASKC.</u>  In consideration for the promises contained in this Agreement, and except for the rights and obligations contained in or arising out of this Agreement, the Estate and the Trustee hereby release and forever discharge the Furman Parties and MASKC from any and all Claims.

G.    <u>Waiver of Section 1542.</u>  Each Party acknowledges that there is a risk that, after executing this Agreement, she/he/it will incur or suffer damage, loss, or injury which is unanticipated at the time of the execution of this Agreement.  Each Party assumes such risk and agrees that this Agreement and the releases contained herein shall and do apply to all unknown facts and unanticipated results, as well as those currently known or anticipated.  Accordingly, each Party acknowledges that she/he/it is aware of the provisions of California Civil Code Section 1542 as set forth above and expressly waives all of its benefits and the benefits of any other similar law of this or any other jurisdiction. Section 1542 reads as follows:

        A general release does not extend to claims which the creditor does
        not know or suspect to exist in his or her favor at the time of executing
        the release, which if known by him or her must have materially
        affected his or her settlement with the debtor.

H.    <u>Release Does Not Apply to Agreement.</u>  The Parties hereto expressly agree that nothing contained herein shall operate to release any of the Parties of their respective obligations, representations, warranties, or indemnities under this Agreement.

I.    <u>Warranties.</u>  Each Party warrants that: she/he/it has full authority to enter into this Agreement; that each of the statements in this Agreement is true; that she/he/it has not assigned or conveyed her/his/its rights, title or interest in or to any Claims released herein to any other person; that she/he/it is executing this Agreement voluntarily and providing consent unaffected by duress

or undue influence; that she/he/it has read this entire Agreement, paragraph by paragraph, and executes it only after being fully advised by counsel; that she/he/it fully understands the meaning of each term in this Agreement and fully understands that this Agreement is a full, final, complete and integrated Agreement which can only be modified in a written document signed by all of the executing Parties; that she/he/it has neither received nor relied on any promises or representations outside the terms of this Agreement and agrees that none may be offered as evidence of the executing Parties' intentions herein.

     J.    <u>Retention of Jurisdiction</u>. The Court shall retain jurisdiction to consider any dispute arising out of this Agreement or the performance thereof.

     K.    <u>General Provisions</u>.

     a.    <u>Additional Documents</u>. Each Party shall, on request of the other Party, take such actions and execute such documents as may be reasonably necessary to carry out the purposes of this Agreement.

     b.    <u>Applicable Law</u>. This Agreement shall be interpreted and construed in accordance with the laws of the State of California.

     c.    <u>Successors and Assigns</u>. This Agreement shall be binding on and inure to the benefit of the Parties and their respective successors and assigns.

     d.    <u>Entire Agreement</u>. This Agreement constitutes the entire agreement of the Parties and supersedes all prior agreements and understandings. In entering into this Agreement the Parties have not relied upon any representations, warranties, statements, assurances, promises or inducements, and are entering this Agreement at arm's-length.

     e.    <u>Amendment</u>. This Agreement may be amended, altered, waived or cancelled, in whole or part, only by a writing signed by all Parties.

     f.    <u>Counterparts</u>. This Agreement may be signed in counterparts, all of which together shall constitute one document.

     g.    <u>Compromise/No Admission of Liability</u>. This Agreement is entered into in the spirit of compromise. None of the statements or promises contained in this Agreement shall be construed as an admission of any fault or liability whatsoever.

     h.    <u>Drafting</u>. The Parties have all participated in the drafting of this Agreement and agree that any rule providing for construction against the drafting party shall not apply to this agreement.

     i.    <u>Attorney Fees</u>. Each of the Parties hereto shall be responsible for their own costs, expenses and attorneys' fees incurred in connection with this matter, and except as specifically provided herein, shall not seek reimbursement from the other Party for such costs, expenses or attorneys' fees.

j.      <u>Time of the Essence</u>.  The Parties acknowledge that time is of the essence with respect to any act, payment or performance required under the terms set forth above.

k.      <u>Representation by counsel</u>.  The Parties hereto acknowledge that each was represented by counsel of their choosing, or by their own choosing declined to obtain legal representation in the negotiation and preparation of this Agreement, that they have carefully read this Agreement and know the contents thereof, agrees thereto, and that they have signed the Agreement freely and voluntarily.

l.      <u>No waiver</u>.  No breach of any provision hereof can be waived unless in writing.  Waiver or breach of any provision hereof shall not be deemed to be a waiver or breach of the same or any other provision hereof.  This Agreement may only be amended by a written agreement executed by the Parties hereto.

m.      <u>Captions</u>.  Any <u>captions</u> to the paragraphs of this Agreement are solely for the convenience of the Parties, are not a part of the Agreement, and shall not be used for the interpretation or determination of the validity of this Agreement or any portion thereof.

**IN WITNESS THEREOF**, the Parties hereto have duly executed this Agreement as of the date opposite their respective signatures.

DATED: _Nov. 29, 2021_

Timothy J. Yoo, solely in his capacity as
Chapter 7 Trustee of Allora Holdings, LLC

Ilon Consulting Corporation, a Florida
corporation

DATED: Nov 30th, 2021

Slava Furman
President

DATED: Nov 30th, 2021

Slava Furman, an individual

DATED: Nov 30th, 2021

Diana Furman, an individual

MARCO & SITARAS, PLLC
As Escrow Agent

DATED: _November 30, 2021_

By: _____
George Sitaras, Esq.
Member